# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-1435-JAR |
| | ) | |
| CONAGRA FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 56) and Defendant ConAgra Foods, Inc.'s ("ConAgra Foods") Motion for Summary Judgment (Doc. 60). The Motions are fully briefed and ready for disposition. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. 56) will be **DENIED** and Defendant's Motion for Summary Judgment (Doc. 60) will be **GRANTED.**

As a preliminary matter, ConAgra Foods has filed a Motion to Strike the affidavit and attached PowerPoint presentation submitted in support of Plaintiff's Motion for Summary Judgment (Docs. 63-2, 63-3, 63-4[1]). ConAgra Foods asserts that neither document is properly before the Court because they were not previously provided to ConAgra Foods during the administrative phase of this matter. Plaintiff responds that the Court's review is not limited to the administrative record. Because the evidence is clearly admissible regarding Count II, the Court will deny ConAgra Foods' Motion to Strike (Doc. 68).

---

[1] Plaintiff inadvertently failed to refile the PowerPoint presentation upon the Court granting his Motion for Leave to File in Excess of Page Limitation. Accordingly, the PowerPoint presentation can be found on the record at Document 57-4. The Court will overlook this oversight and treat the PowerPoint presentation as properly filed with Plaintiff's Memorandum in Support of his Motion for Summary Judgment.

# I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal–Mogul Ignition Co.*, 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52).

## II.     UNDISPUTED FACTS[2]

On January 29, 2013, ConAgra Foods acquired Ralcorp Holdings, Inc. ("Ralcorp"). Prior to the acquisition, Plaintiff was employed by Ralcorp with the title of Vice President of Operations. Plaintiff continued working for ConAgra Foods after the acquisition, and on July 15, 2013, ConAgra Foods offered Plaintiff the title of Vice President of Manufacturing. Plaintiff worked for ConAgra Foods as Vice President of Manufacturing from July 15, 2013, until January 31, 2014. In his role with both Ralcorp and ConAgra Foods, Plaintiff was eligible to receive severance benefits under the Ralcorp Holdings, Inc. Severance Plan for Exempt Administrative Employees Eligible for the Ralcorp Holdings, Inc. Management Bonus Program (the "Severance Plan"), provided he met certain eligibility requirements.

*Terms of the Severance Plan*

Under Article II of the Severance Plan, a participant may be eligible for benefits if he voluntarily terminates his employment "for Good Reason (during the 90-day period following the initial existence of Good Reason) . . . within 24 months following a Change in Control" (Doc. 62-2 at 6). "Change in Control" and "Good Reason" are defined terms in the Severance Plan. "Change in Control" is defined in Article III, Section D.5. of the Severance Plan (*Id.* at 9-

---

[2] The facts are taken from Plaintiff's Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment as to Count I (Doc. 58), Plaintiff's Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment as to Count II (Doc. 58-1), Defendant's Statement of Material Facts (Doc. 62), Plaintiff's Response to Statement of Uncontroverted Facts Supporting Defendant's Motion for Summary Judgment (Doc. 67), Defendant's Response in Opposition to Plaintiff's Statement of Facts in Support of his Motion for Summary Judgment as to Count I (Doc. 70), Defendant's Response in Opposition to Plaintiff's Statement of Facts in Support of his Motion for Summary Judgment as to Count II (Doc. 71), Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment (Doc. 81), Plaintiff's Reply in Support of Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment as to Count I (Doc. 82), and Plaintiff's Reply in Support of Statement of Undisputed Facts Supporting Plaintiff's Motion for Summary Judgment as to Count II (Doc. 83).

10). "Good Reason" is defined in Article III, Section D.7. and includes any of the following acts by ConAgra Foods, without the employee's consent:

> a) a material reduction by the Company in the Employee's base salary, annual bonus award opportunity, and annual long-term equity-based incentive opportunity, taken as a whole . . .; b) i) a material reduction in the Employee's position, duties or responsibilities; or ii) a material adverse change in the Employee's reporting relationships; c) the Company requiring the Employee without his or her consent, to be based at any office or location more than 50 miles from the office at which the Employee was principally located immediately prior to the Change in Control; or d) the material breach by the Company of any employment agreement between the Employee and the Company.

(*Id.* at 10). The definition of "Good Reason" also states: "an act by the Company shall not constitute 'Good Reason' unless the Employee gives written notice of the same to the Company within 30 days of such act, and the Company fails, within 30 days of such notice, to reverse such act" (*Id.*). The Severance Plan does not require a written response to this notice.

If a dispute arises between ConAgra Foods and an employee over whether benefits are owed, then the employee must file a claim for benefits in accordance with the procedure outlined in Article IV, Section A of the Severance Plan (*Id.* at 10-11). If the Plan Administrator denies the claim, and the employee disagrees with that denial, then the employee may appeal to the Benefit Administration Committee ("BAC" or "EBAC") (*Id.* at 11). Such an appeal must state why the employee believes his or her claim should have been approved and must be supported by relevant information or documents (*Id.*). The Severance Plan gives the Plan Administrator and the BAC "the exclusive discretionary authority to construe and interpret the [Severance] Plan [and] to decide all questions of eligibility for benefits," including the discretion to decide whether "Good Reason" exists (*Id.*).

Plaintiff had a copy of the Severance Plan after ConAgra Foods' acquisition of Ralcorp and understood his obligations with respect to claiming benefits under its "Good Reason" provision (Deposition of James Boyd, Doc. 62-1 at 16-18 (hereinafter "Boyd Dep."); Doc. 62-5).

*August 12, 2013 Letter*

On August 12, 2013, Plaintiff sent Amy Ariano ("Ms. Ariano"), Vice President of Human Resources for the Ralcorp Integration, written notice that he believed he had "Good Reason" to terminate his employment on July 15, 2013 when he received the offer to continue working for ConAgra Foods as Vice President of Manufacturing (Doc. 62-2 at 24-25). In the written notice, Plaintiff alleged there were "material differences" between the job he held with Ralcorp (Vice President of Operations) and the job he was offered with ConAgra Foods (Vice President of Manufacturing) (*Id.* at 24). Specifically, Plaintiff alleged that two plants were added to his workload, his authority over hiring had decreased, his reporting relationships had changed, and his compensation and benefits had been altered (*Id.* at 24-25).

As Vice President of Human Resources for the Ralcorp Integration, Ms. Ariano led a committee that administered the Severance Plan (the "Committee"). When a plan participant provided written notice, as Plaintiff did on August 12, 2013, the Committee would investigate the participant's allegations and evaluate whether they met the definition of "Good Reason" by comparing the participant's job before the acquisition to the participant's job after the alleged event(s) giving rise to "Good Reason". Accordingly, Ms. Ariano and the Committee investigated the allegations in Plaintiff's August 12, 2013 notice, conducted a "before and after" evaluation of Plaintiff's job, and determined that Plaintiff had not experienced a material change in his position such that he had "Good Reason" to terminate his employment under the Severance Plan. On or about August 20, 2013, Ms. Ariano spoke with Plaintiff about the allegations in his August 12, 2013 notice, told him that ConAgra Foods did not agree that he had "Good Reason," explained the appeals process, and offered to answer any questions about Plaintiff's claim or that

process. On September 30, 2013, Plaintiff signed his employment agreement with ConAgra Foods (*Id.* at 27-28).

*November 11, 2013 Letter*

On November 11, 2013, Plaintiff submitted an amended written notice alleging that ConAgra Foods had "increased" his "Good Reason" since August 12, 2013 by eliminating his capital approval authority and assigning a project manager to assist with the Red Card Project over which Plaintiff had responsibility (*Id.* at 30-31). After receiving Plaintiff's amended notice, Ms. Ariano and the Committee again investigated Plaintiff's allegations and compared his job before the acquisition to his job after the acquisition. Based on their investigation, the Committee determined that neither Plaintiff's job duties, nor his reporting relationships, had materially changed.

*December 6, 2013 Letter*

On December 6, 2013, Plaintiff submitted a second amended written notice alleging that ConAgra Foods had again "increased" his "Good Reason" (*Id.* at 33). This time, Plaintiff alleged that his exclusion from a Senior Leadership Team ("SLT") meeting in November 2013 materially changed his responsibilities (*Id.*). Ms. Ariano's Committee again investigated Plaintiff's allegation, evaluated Plaintiff's job before and after the acquisition, and determined that he did not have "Good Reason" to terminate his employment.

*Conversation with Ms. Schaefer*

Kelly Schaefer ("Ms. Schaefer"), Vice President of Human Resources for Supply Chain, spoke with Plaintiff on December 19 and 20, 2013. When Ms. Schaefer spoke with Plaintiff, she did so at the direction and with the assistance of the Committee (*Id.* at 36-38). On December 19, 2013, Ms. Schaefer informed Plaintiff that ConAgra Foods received his amended notice,

investigated his allegations, and determined that he did not have "Good Reason". Ms. Schaefer and Plaintiff spoke again on December 20, 2013, during which time the Red Card Project was discussed.

*Termination Notice*

On January 16, 2014, Plaintiff submitted a "Notice of Specific Date of Termination for Good Reason" to Ms. Ariano indicating that he would self-terminate his employment on January 31, 2014 (*Id.* at 42-43). Plaintiff's notice of termination alleged that ConAgra Foods "increased" his "Good Reason" again in December 2013 when it excluded him from a Network Optimization Meeting and replaced a plant manager at one of the plants over which Plaintiff had responsibility without his involvement (*Id.* at 42). Ms. Ariano and the Committee investigated Plaintiff's allegations and evaluated whether "Good Reason" existed. Based on their evaluation, the Committee again determined that Plaintiff did not have "Good Reason" to terminate his employment.

*Benefits Claim*

On February 7, 2014, Plaintiff filed a claim for severance benefits under Article IV, Section A of the Severance Plan (*Id.* at 44-45). In his claim, Plaintiff alleged that he had "Good Reason" because he experienced a material reduction in his job responsibilities and authority and a material adverse change in his reporting relationships after he was offered the position of Vice President of Manufacturing with ConAgra Foods on July 15, 2013 (*Id.*). Specifically, Plaintiff argued he had "Good Reason" because he was excluded from the SLT meeting in November 2013, the Network Optimization Meeting in December 2013, and the decision-making process with respect to the immediate replacement of a plant manager (*Id.*).

On April 10, 2014, the Plan Administrator denied Plaintiff's claim (*Id.* at 46-49). The Plan Administrator informed Plaintiff that his claim was denied for two reasons. First, Plaintiff failed to meet minimum eligibility criteria for obtaining severance benefits under the Severance Plan because he failed to terminate his employment within the 90-day window following the initial existence of "Good Reason" (*Id.* at 47). Second, even if Plaintiff had timely terminated his employment, he did not have "Good Reason" because he "did not incur a material reduction in his position, duties or responsibilities or a material adverse change in his reporting relationships" (*Id.* at 47-48).

On April 28, 2014, Plaintiff filed an appeal for severance benefits under Article IV, Section A of the Severance Plan (*Id.* at 52-54). On appeal, Plaintiff alleged he had "Good Reason" based on his allegations that ConAgra Foods excluded him from the SLT meeting, the Network Optimization Meeting, and the plant manager decision (*Id.* at 53). Plaintiff's appeal also challenged the Plan Administrator's decision to deny his claim as untimely, arguing that ConAgra Foods' determination with respect to his prior allegations prevented it from taking the position that Plaintiff did not timely terminate his employment within the 90-day window (*Id.*).

On May 27, 2014, the EBAC met to review Plaintiff's appeal (*Id.* at 66, 82, 84, 86-90). The EBAC upheld the Plan Administrator's denial of Plaintiff's claim for benefits (*Id.* at 91-92). The EBAC explained its reasoning for denying Plaintiff's "Good Reason" appeal, referring to the Plan Administrator's evaluation of Plaintiff's allegations for support (*Id.*).

## III. DISCUSSION

### A. Count I: Claim for Severance Benefits

In Count I, Plaintiff asserts a claim for severance benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Both Parties now move for summary judgment on this

Count. In relevant part, ERISA allows a plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 1132(a)(1)(B).

The Severance Plan gives the Plan Administrator and the BAC "the exclusive discretionary authority to construe and interpret the [Severance] Plan [and] to decide all questions of eligibility for benefits," including the discretion to decide whether "Good Reason" exists. When an ERISA plan grants the plan administrator discretion to interpret a plan, the Court generally reviews the interpretation and the resulting grant or denial of benefits only for an abuse of discretion. *Yafei Huang v. Life Ins. Co. of N. Am.*, 801 F.3d 892, 898 (8th Cir. 2015). Where, as here, the Plan Administrator is also the claims-paying entity, the Court must take the financial conflict of interest into consideration when conducting its review. *Id.* However, the Eighth Circuit has explained that, "[t]he simple fact a conflict exists, . . . does not eliminate the administrator's discretion or change [the Court's] review of the administrator's decision to de novo review." *Id.* (citing *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1196 (8th Cir. 2014) ("[W]e take this inherent financial conflict of interest into account in deciding whether an abuse of discretion has occurred.")).

"In reviewing for an abuse of discretion, the administrator's decision should be reversed 'only if it is arbitrary and capricious.'" *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011) (internal quotation omitted). "The administrator's decision should be affirmed if it is reasonable, meaning it is supported by substantial evidence." *Id.* (quoting *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir. 2006)). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quoting *Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009)). Ultimately, "[t]he requirement that the plan

administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* (quoted case and internal quotation marks omitted) (emphasis in original).

In this case, the Plan Administrator informed Plaintiff that his claim was denied for two reasons. First, Plaintiff failed to meet minimum eligibility criteria for obtaining severance benefits under the Severance Plan because he failed to terminate his employment within the 90-day window following the initial existence of "Good Reason" (Doc. 62-2 at 47). Second, notwithstanding his untimely self-termination, Plaintiff did not have "Good Reason" because he "did not incur a material reduction in his position, duties or responsibilities or a material adverse change in his reporting relationships" (*Id.* at 47-48). Under the deferential standard of review applicable in this case, the Court finds and concludes that substantial evidence in the record supports ConAgra Food's denial of Plaintiff's severance benefits.

### a) Untimely Self-Termination

ConAgra Foods first asserts that Plaintiff's self-termination on January 31, 2014, was untimely. Specifically, ConAgra Foods argues that Plaintiff's voluntary termination was outside the 90-day period following Plaintiff's initial claim of Good Reason of July 15, 2013, the date when he received an offer to continue working for ConAgra Foods as Vice President of Manufacturing. Plaintiff, on the other hand, argues that he first became aware of a circumstance definitively evidencing a material erosion in his job responsibilities and authority on November 7, 2013, the last day of the SLT Meeting. Plaintiff also notes that while he may have initially believed he had Good Reason as of July 15, 2013, he relied on his employer's veracity in

denying his Good Reason letters and accepted its assurances that his ConAgra Foods position was commensurate in responsibility and authority with his Ralcorp position.

The Court finds that ConAgra Foods abused its discretion in its determination that Plaintiff untimely terminated his employment. Under Article II of the Severance Plan, a participant may be eligible for benefits if he voluntarily terminates his employment "for Good Reason (during the 90-day period following the initial existence of Good Reason) . . . within 24 months following a Change in Control" (Doc. 62-2 at 6) (emphasis added). Plaintiff filed his first Good Reason letter on August 12, 2013, indicating that on July 15, 2013, he received an offer of a new position with ConAgra Foods and although the job was similar to his previous position, he had experienced a material increase in his duties and responsibilities, a material adverse change in his reporting relationships, and a material decrease in his compensation (Id. at 24-25). Plaintiff thereafter filed two additional letters, one on November 11, 2013, and one on December 6, 2013, and self-terminated on January 31, 2014.

If the Court were to interpret the Plan as ConAgra Foods has suggested, Plaintiff's January 31, 2014 self-termination would be untimely because it is well outside the 90-day window from the July 15, 2013 employment offer, his first alleged incident of Good Reason. However, it is an unreasonable interpretation of the phrase "initial existence of Good Reason" to prohibit an employee from bringing forward allegations of Good Reason that may arise thereafter. To do so would free the Plan and Plan Administrator from any liability even if the employee chose to remain with the employer and an incident arising to the level of Good Reason under the Plan arose thereafter. Under the plain language of the Plan, initial clearly refers to the date the act or omission allegedly rising to the level of Good Reason occurred, as opposed to the date the employee gave notice to the employer to reverse or otherwise cure the act or omission.

Therefore, if an employee chooses to challenge the employer's decision regarding a specific incident, he must do so within the indicated timeframe by timely self-terminating. However, if an employee chooses not to challenge the employer's decision or the employer cures the defect, the employee should not be penalized moving forward and should be able to raise additional issues, as necessary, with the employer. Furthermore, the Plan contemplates self-termination within 24-months following a change of control. This provision both limits the time in which an employee may raise issues of Good Reason but also invites an employee to present separate instances of Good Reason to the employer as they arise during this period. Although an employee may not refer back or accumulate instances of Good Reason, any incidents Plaintiff brought to the attention of the Plan Administrator within 90-days of his self-termination were timely under the Plan and, therefore not procedurally barred.

Accordingly, the Court finds ConAgra Foods abused its discretion in its determination that Plaintiff untimely terminated his employment.

**b) Merits Review**

Although the Court finds that ConAgra Foods abused its discretion in its determination that Plaintiff untimely terminated his employment, the Court finds the Plaintiff's claim fails because ConAgra Foods did not abuse its discretion in its determination to deny Plaintiff's claim on the merits. "Good Reason" is defined in Article III, Section D.7. and includes any of the following acts by ConAgra Foods, without the employee's consent:

> a) a material reduction by the Company in the Employee's base salary, annual bonus award opportunity, and annual long-term equity-based incentive opportunity, taken as a whole . . .; b) i) a material reduction in the Employee's position, duties or responsibilities; or ii) a material adverse change in the Employee's reporting relationships; c) the Company requiring the Employee without his or her consent, to be based at any office or location more than 50 miles from the office at which the Employee was principally located immediately prior to the Change in Control; or d) the material breach by the Company of any employment agreement between the Employee and the Company.

Plaintiff asserts that he experienced a material reduction in his position, duties and responsibilities. In support of this assertion, Plaintiff identifies the following specific examples he claims represent Good Reason sufficient to have self-terminated his employment and recover severance benefits under the Plan.[3] First, Plaintiff was not asked to participate in nor attend the November 6-7, 2013 Meeting of the ConAgra Private Brands business that was conducted in St. Louis with the Senior Leadership Team. Plaintiff argues that in his previous position this is a meeting that he would have regularly attended and in which he would have been an integral and active participant and contributor. Second, Plaintiff was also excluded from the Network Optimization Meeting held in Omaha, Nebraska, on December 11, 2013, where the Red Card Project was analyzed and altered without Plaintiff's input. Further, Plaintiff asserts, throughout the transition from Ralcorp, although ConAgra Foods maintained that Plaintiff retained the Business Owner role for the Red Card Project, he was excluded from this meeting in which the project was materially altered. At Ralcorp, the Red Card Project could not have been materially altered without Plaintiff's input in the decision-making process. Finally, on December 23, 2013, Plaintiff's supervisor, Chris Whitehair ("Mr. Whitehair"), excluded Plaintiff from the decision-making process concerning the replacement of the plant manager of the Newport, Arkansas facility. A decision of this magnitude, affecting a plant that Plaintiff had responsibility over, would never have been made without his knowledge and input at Ralcorp. The Court will address each of the claims in turn.

### 1) The November 6-7, 2013 Senior Leadership Team Meeting

---

[3] Although at various times during his employment with ConAgra Foods, Plaintiff raised other indicia of "Good Reason," these are the only alleged instances of Good Reason provided in Plaintiff's Motion for Summary Judgment and are, therefore, the only items before the Court for review. Doc. 62 at 8-10. *See also* Doc. 66 at 4-5.

Plaintiff first asserts that he had Good Reason to self-terminate his employment because he was excluded from the Meeting held on November 6th and 7th of 2013. However, nothing in the record suggests that Plaintiff's exclusion from the Meeting was a material reduction in his job responsibilities. The Parties do not dispute that Plaintiff was not invited to attend the November 6-7, 2013 Meeting of the Senior Leadership Team. However, at ConAgra Foods the Senior Leadership Team consists of individuals reporting to the CEO (Doc. 62-2 at 48). Mr. Whitehair, Plaintiff's supervisor, reported to the CEO and participated in the meeting (*Id.*; Deposition of Amy Ariano, Doc. 62-3 at 56 (hereinafter "Ariano Dep.")). There were not any other individuals at Plaintiff's level who were asked to participate in the meeting (Ariano Dep. at 56). Furthermore, prior to the acquisition, Plaintiff's supervisor, Darren Baker, would have attended such a meeting (*Id.*). Plaintiff does not provide or cite to any evidence to the contrary. Accordingly, sufficient evidence supports ConAgra Foods' decision finding that Plaintiff's exclusion from the November 6-7, 2013 Meeting did not amount to Good Reason under the Severance Plan.

### 2) The December 11, 2013 Network Optimization Meeting

Plaintiff next asserts that he had Good Reason to self-terminate his employment because he was excluded from the Network Optimization Meeting held in Omaha, Nebraska, on December 11, 2013, where the Red Card Project was analyzed and altered without Plaintiff's input. However, Plaintiff asserted before the Plan Administrator that his failure to merely participate in the meeting, without any mention of the Red Card Project, was sufficient to support a material change in his job responsibilities. *See* Doc. 62-2 at 77 ("Mr. Boyd was also excluded from the Network Optimization Meeting in Omaha on December 12-13. In no event could a meeting of that scope have occurred at RalCorp without his participation."). To the

extent Plaintiff now appears to assert that his duties with respect to the Red Card Project were materially altered or that, because the Red Card Project was materially altered at this meeting, he would have been in attendance in his previous position, the Court may not review these allegations because Plaintiff abandoned them during the administrative phase of the claims process. *Wert v. Liberty Life Assur. Co. of Boston*, 447 F.3d 1060, 1066 (8th Cir. 2006); *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009). Accordingly, because Plaintiff failed to exhaust these allegations, the Court will deny them as it relates Plaintiff's claim for severance benefits and will only consider them as they relate to Plaintiff's fiduciary duty claim.

Regarding Plaintiff's assertion that he had Good Reason to self-terminate his employment because he was excluded from the Network Optimization Meeting held in Omaha, Nebraska, on December 11, 2013, the Plan Administrator determined that Plaintiff would not have participated in the Network Optimization Meeting and therefore his exclusion from the meeting was not a material reduction in his job responsibilities. While the Parties do not dispute that Plaintiff was not asked to participate in the meeting, the record reflects that Plaintiff would not have been invited to the Network Optimization Meeting prior to the acquisition because the focus of the meeting was on an area of business outside of Plaintiff's responsibility, the grocery platform (Deposition of Kelly Schaefer, Doc. 62-4 at 59-60 (hereinafter "Schaefer Dep."); Ariano Dep. at 58). Accordingly, sufficient evidence supports ConAgra Foods' decision finding that Plaintiff's exclusion from the Network Optimization Meeting did not amount to Good Reason under the Severance Plan.

**3) Replacement of the Plant Manager of the Newport, Arkansas Facility**

Finally, Plaintiff asserts that he had Good Reason to self-terminate his employment because on December 23, 2013, Plaintiff's supervisor, Mr. Whitehair, excluded Plaintiff from the decision-making process concerning the replacement of the plant manager of the Newport, Arkansas facility. Similar to Plaintiff's supervisor prior to the acquisition, Mr. Whitehair had the authority to unilaterally make the decision to replace a plant manager (Doc. 62-2 at 47-48; Schaefer Dep. at 64-66). Also, although Plaintiff was not afforded decision-making authority in this instance, he was consulted regarding the decision (Doc. 62-2 at 47-49). Further, the record reflects the unique circumstances of this hiring decision. Specifically, the organization had been given short notice by the plant manager during a difficult time of the year, the week of Christmas, requiring a short-term solution (Schaefer Dep. at 63-64). Additionally, although the Court's ultimate decision rests on the decision-making process regarding the replacement of the plant manager, it is important to note that the Plant Manager withdrew his resignation. Because there is no evidence that Plaintiff suffered a material alteration to his job responsibilities, the Court finds substantial evidence to support ConAgra Foods determination that this incident did not constitute Good Reason under the Severance Plan.

Accordingly, under the deferential standard of review applicable in this case, the Court finds and concludes that substantial evidence in the record supports ConAgra Foods' denial of Plaintiff's severance benefits.

## B.      Count II: Fiduciary Duty Claim

In the alternative, Plaintiff asserts a Breach of Fiduciary Duty claim pursuant to ERISA Section 502 (a)(3), 29 U.S.C. § 1132(a)(3) (Count II). Plaintiff argues that ConAgra Foods failed to provide him clarification concerning the definition of Good Reason or what ConAgra Foods considered to be material and that Ms. Schaefer misrepresented and omitted material information

from Plaintiff about the Red Card Project (Doc. 63 at 14). Both Parties also move for summary judgment on this Count. A claim for a breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty, and (3) that the breach resulted in harm to the plaintiff. *Lanpher v. Metro. Life Ins. Co.*, 50 F. Supp. 3d 1122, 1148 (D. Minn. 2014). *See also Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009). Such an inquiry is "inevitably fact intensive." *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).

### 1. Fiduciary

The threshold question in every case charging a breach of fiduciary duty is whether that person was acting as a fiduciary when taking the action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Any person is a fiduciary "to the extent" he or she:

> exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

*Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 674-675 (8th Cir. 1999) (quoting 29 U.S.C. § 1002(21)(A)). *See also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("a party is a fiduciary only as to the activities which bring the person within the definition").

Although ConAgra Foods does not dispute that it has fiduciary obligations to plan participants under ERISA, it does dispute that Ms. Schaefer, its employee, acted as a fiduciary in her interactions with Plaintiff. Specifically, ConAgra Foods asserts that, at worst, Ms. Schaefer's comments amount to mistaken advice by a ministerial, non-fiduciary agent. In support of its assertion that a ministerial agent is not a fiduciary, ConAgra Foods cites to *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010). Plaintiff responds that not only is *Kenseth,* as a Seventh Circuit case, non-binding, but also that adopting this precedent would allow plan

administrators, as fiduciaries, to insulate themselves from liability by having ministerial workers communicate with plan participants about the extent and nature of their benefits. Furthermore, Plaintiff argues that *Kenseth* is distinguishable because Ms. Schaefer was Vice President of Human Resources and acting as, and at the direction of, a fiduciary.

In *Kenseth*, before having surgery, plaintiff telephoned her health maintenance organization's ("HMO") customer service line to determine whether her surgery would be covered by her insurance. She was advised that it would be, subject to a $300 copayment. But the day after she had the surgery, her HMO denied coverage, relying on provisions in the insurance plan. In addition to a number of other claims, Ms. Kenseth brought an ERISA breach of fiduciary duty claim against her insurance company. The Seventh Circuit held that the insurance company could not be held liable on the basis of respondeat superior for the statements made by the customer service representative. *Kenseth,* 610 F.3d at 465.

Unlike in *Kenseth*, however, Ms. Schaefer was not acting, in this instance, as a ministerial agent. While a human resources director is not necessarily a fiduciary, when Ms. Schaefer spoke with Plaintiff, she did so at the direction and with the assistance of the Committee. She was provided a detailed outline of the information the Committee wanted her to provide to Plaintiff. *See* Doc. 62-2 at 36-37 ("[W]e want to keep this relatively high level, but convey enough detail so he knows some of the considerations."). The email correspondence and outline also included some anticipated questions and appropriate responses to them (*Id.* at 37). When an individual, such as Ms. Schaefer, acts as an agent for the Plan Administrator, not merely as an employee akin to a customer service agent, her actions are imputed upon the Plan Administrator, a fiduciary. Therefore, the Court will not distinguish these remarks from those of Ms. Ariano because Ms. Schaefer acted on behalf of the Committee.

### 2. Fiduciary Duty

The next element in a breach of fiduciary duty claim is whether the fiduciary breached a fiduciary duty owed to the Plaintiff. "Borrowing from trust law, ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan. . . ." *Martin v. Feilen*, 965 F.2d at 664. *See also* 29 U.S.C. §§ 1104-06, 1109. 29 U.S.C. § 1104(a)(1). Specifically,

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and . . .
>
> (B) with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

§ 1104(a)(1). In accordance with this obligation, a fiduciary "may not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan when discussing a plan." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) (citations omitted). A statement is materially misleading if there is "a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding . . . benefits to which she might be entitled." *Id.* Additionally, a fiduciary "has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." *Id.* (citations omitted). A fiduciary's common law duty of loyalty "requires a fiduciary to disclose any material information that could adversely affect a participant's interest." *Id.*

### (a) Failure to Clarify the Terms "Good Reason" and "Material"

Plaintiff asserts that ConAgra Foods breached its fiduciary duty when it failed to provide him clarification concerning the definition of Good Reason or what ConAgra Foods considered to be material (Doc. 63 at 14). Specifically, Plaintiff argues that when Ms. Ariano spoke with Plaintiff about the allegations in his August 12, 2013 notice, she made a material omission by not explaining what ConAgra Foods considered "material" (*Id.*). Plaintiff additionally asserts that when he spoke with Ms. Schaefer, she also failed to provide clarification concerning the definition of Good Reason or what ConAgra Foods considered to be material (*Id.*). Plaintiff argues that he relied on and accepted these representations by ConAgra Foods, which, he claims, were insufficient to provide him guidance about the standard of review ConAgra Foods was applying to the Severance Plan provisions (*Id.*). Furthermore, Plaintiff appears to argue that a written response is imputed from 29 U.S.C. § 1022(a) which requires communication of plan terms, in writing, "in a manner calculated to be understood by the average plan participant" (Doc. 66 at 13).

ConAgra Foods asserts that the definition of "Good Reason" provided in the Severance Plan is calculated to be understood by the average plan participant and is therefore in compliance with ERISA regulations (Doc. 61 at 14). Further, ConAgra Foods argues Plaintiff never notified anyone at ConAgra Foods that he was confused about his benefits or that he did not understand the terms used in the Severance Plan (Doc. 72 at 14).

As a preliminary matter, ConAgra Foods' determinations regarding whether or not to cure Plaintiff's alleged material changes in his job duties need not be in writing. Section 1022 states a summary plan description "shall be written in a manner calculated to be understood by the average plan participant." This section is inapplicable to the discussions at issue; they are clearly not summary plan descriptions. *See Antolik v. Saks, Inc.,* 463 F.3d 796, 801 (8th Cir.

2006) (finding a letter was not intended to be a summary plan description because it did not attempt to explain the plan's complex provisions). Further, as an opportunity to cure, these initial discussions do not amount to a denial of severance benefits requiring notice per 29 U.S.C. § 1133. *See Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1461 (10th Cir. 1991) ("The denial of requests for certain forms of benefits, rather than for the benefit itself, do not require notice or review under § 1133."). The Court, therefore, must turn to the terms of the Severance Plan and, in this case, the Severance Plan does not require a response to these kinds of inquiries in writing.

Next, the Court finds that the Severance Plan terms are provided in the plan document in a manner calculated to be understood by the average plan participate. The definition of "Good Reason" can be found in the Severance Plan at Article II, Section D.7. While the term "material" is not defined in the Severance Plan, the definition of "Good Reason" complies with ERISA's regulations. *See Bader v. RHI Refractories Am., Inc.,* 111 F. App'x 117, 121 n.4 (3d Cir. 2004) (upholding an employer's determination using a nearly identical definition of "Good Reason"). *See also* 26 C.F.R. § 1.409A-1 (providing a safe harbor to certain tax provisions for good reason terminations and defining good reason such that it tracks the language in this case and omits defining "material"). To define "material" in the Severance Plan would violate ERISA's provisions as it is clear from the record that the determination of a material change requires a case by case, fact intensive review. As it is currently written, the term "material" therefore takes on its ordinary meaning and is to be applied to the facts of the specific claim before the Committee. *Brewer v. Lincoln Nat. Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990).

Finally, the Court finds that to the extent Ms. Ariano and Ms. Schaefer could have explicitly explained what a material change in Plaintiff's position would entail, this alleged failure does not amount to a material omission. Fiduciaries are not required to anticipate every

possible application of a plan to the plan participant. *See Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 985 (8th Cir. 1992). *See also Erlitz v. Cracker Barrel Old Country Store, Inc.*, 416 F. Supp. 2d 711, 722 (E.D. Mo. 2006) ("An ERISA fiduciary satisfies its duty to inform where its employee benefit plan documentation itself informs participants and beneficiaries of their rights and obligations."). Plaintiff had a copy of the Severance Plan and he never asked either Ms. Ariano or Ms. Schaefer to define or apply "material" to his specific case.

Accordingly, the Court finds that ConAgra Foods did not breach its fiduciary duty in failing to provide Plaintiff clarification concerning the definition of Good Reason or what ConAgra Foods considered to be material.

### (b) The Red Card Project Misrepresentation and Omission

Plaintiff next argues that Ms. Schaefer told him that project coordination duties for the Red Card Project were not the responsibility of Vice Presidents prior to the acquisition (Docs. 66 at 12, 80 at 5). Plaintiff also asserts that Ms. Schaefer omitted material information from him about the Red Card Project (Doc. 63 at 14). Specifically, Plaintiff argues that when she orally responded to Plaintiff's November 11, 2013 Good Reason letter, Ms. Schaefer stated that Plaintiff remained the Business Owner for Red Card but failed to mention that the project was discussed and overhauled at the December 11, 2013 Network Operations meeting (*Id.*). If provided this information, Plaintiff argues that he may have self-terminated earlier (*Id.*). However, because of this failure to accurately communicate Plaintiff's job responsibilities and authority, Plaintiff asserts that he self-terminated without adequate information (*Id.* at 15).

ConAgra Foods argues that the alleged statement was not material because nothing in the record suggests that the alleged statement prejudicially misled Plaintiff in his pursuit for

severance benefits and the alleged statement did not have any effect on the outcome of Plaintiff's claim (Doc. 61 at 13).

The Court finds that the Red Card Project was not materially altered. According to Ms. Schaefer, who was present at the Network Optimization Meeting, the amount of time spent on the Red Card Project at the meeting was minimal (Schaefer Dep. at 61). Specifically, "[j]ust an overview of what was going on [because] the grocery team members and . . . some of the frozen team members were there as well, and they wouldn't have had familiarity to it. So those particular projects were covered as, here's what else is going on, as an FYI" (*Id.*). Her statements are supported by the concurring deposition testimony of Ms. Ariano. Ms. Ariano testified, "He still had responsibility for Red Card. He was given a support person to assist him in that. . . [but] he still had responsibility for Red Card and there was not a material change in that" (Ariano Dep. at 46).

Plaintiff attempts to rebut this argument with his assertion that during the Network Optimization Meeting, the scope of the Red Card Project was modified without his knowledge. In support of his claim, Plaintiff provides the Court with his own affidavit (Doc. 63-1) and a copy of a PowerPoint presentation dated January 23, 2014 titled "Red Card Avoided Scope Analysis" (Doc. 63-4). Plaintiff does not indicate how the Red Card Project's scope was modified, only that it was "substantially overhauled" (*See* Docs. 63 at 14, 63-1, 58-1 at ¶29, 66 at 10-11). While the PowerPoint presentation includes, in the Executive Summary, a line item of "Accelerate the timing of $35M of Red Card Operating Profit Savings by up to one year" and another of "Reduce $23M of capital scope related to capacity in light of volume forecast relative to budget," without any meaningful context, the Court cannot discern the PowerPoint presentation's significance (Doc. 63-4 at 2). Therefore, Plaintiff's self-serving statement without

any factual or other evidentiary support is insufficient to overcome ConAgra Foods' proffered evidence. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.").

Even if the Court were to find a material factual dispute exists as to the material modification of the Red Card Project, the Court finds that Plaintiff did not reasonably rely, to his detriment, on the representations that the Red Card Project was not materiality altered. In an ERISA breach-of-duty claim, Plaintiff must demonstrate reasonableness and detrimental reliance. *Brant v. Principal Life & Disability Ins. Co.*, No. 02–2036NI, 2002 WL 31477623, at *2 (8th Cir. Nov. 7, 2002); *Huang v. Life Ins. Co. of N. Am.*, 47 F. Supp. 3d 890, 910 (E.D. Mo. 2014) aff'd sub nom. *Yafei Huang v. Life Ins. Co. of N. Am.*, 801 F.3d 892 (8th Cir. 2015). However, in this case, Plaintiff previously brought but then abandoned his Red Card Project claims during the course of the administrative proceedings. Further, Plaintiff knew about these specific modifications to the project as early as January 23, 2014, the date he received the PowerPoint Presentation, but did not include them in his claim for benefits filed February 7, 2014 (Doc. 63-1 at ¶11). Therefore there is no indication that Plaintiff relied on the misrepresentation.

Finally, the Court finds Ms. Schaefer's statement that Vice Presidents at Ralcorp did not have project coordination duties over their projects not to be a material misrepresentation. Whether other Vice Presidents at Ralcorp had project coordination duties over their projects was irrelevant in the determination of his severance benefits under the Severance Plan because the determination of Plaintiff's claim rests solely on any changes in his position. Furthermore, given Plaintiff's personal experience with the management of the Red Card Project while he was employed at Ralcorp, Plaintiff knew if he had previously engaged in project management duties

and to what extent his role may have been modified. Therefore, the Court finds that a reasonable employee in the same situation would not be misled by Ms. Schaefer's statement. *Kalda*, 481 F.3d at 644 (internal quotation marks omitted).

Even if the Court were to find that the statement was material and misled Plaintiff, the Court finds it unreasonable for Plaintiff to have relied on this representation as he had easy access to convenient ways of ascertaining the truth of this proposition, including his own experience. *See Brant v. Principal Life & Disability Ins. Co.*, 195 F. Supp. 2d 1100, 1116 (N.D. Iowa) aff'd, 50 F. App'x 330 (8th Cir. 2002) (*citing Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 586 (7th Cir. 1999)). Furthermore, such reliance was not detrimental as the Court cannot see how, even in the light most favorable to Plaintiff, the modification in his position from project manager to business project owner would amount to a material change warranting severance benefits under the Severance Plan.

Accordingly, the Court finds that ConAgra Foods did not breach its fiduciary duty and that summary judgment in favor of ConAgra Foods is warranted on Count II.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ConAgra Foods' Motion to Strike (Doc. 68) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 56) is **DENIED** and ConAgra Foods' Motion for Summary Judgment (Doc. 60) is **GRANTED.**

A separate judgment will accompany this order.

Dated this 26th day of February, 2016.

*John A. Ross*
_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**